NAOMI SHEFFIELD, OSB No. 170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
WILLIAM W. MANLOVE, OSB No. 891607
Sr. Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MARK USHER, STEVEN BLACK, SCOTT RUPP, JENNIFER BRYANT, individually and on behalf of others similarly situated,** | **Case No. 3:21-cv-00937** |
| **Plaintiffs,** | **DEFENDANT CITY OF PORTLAND'S REMOVAL NOTICE** |
| **v.** | |
| **CITY OF PORTLAND, an Oregon municipal corporation,** | |
| **Defendant.** | |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1331, 1441(a) and (c), and 1446 Defendant City of Portland ("City") removes this action from the Circuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon, Portland Division, and states as follows:

1.    The removing party, the City, is the defendant in the above-captioned action.

2.    On May 24, 2021, the above-entitled action was commenced against the City in the Circuit Court of the State of Oregon for the County of Multnomah and is now pending in such court, with the court case number 21CV20998.

Page  1  –  DEFENDANT CITY OF PORTLAND'S REMOVAL NOTICE

NAOMI SHEFFIELD, OSB No. 170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
WILLIAM W. MANLOVE, OSB No. 891607
Sr. Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MARK USHER, STEVEN BLACK, SCOTT RUPP, JENNIFER BRYANT, individually and on behalf of others similarly situated,** | **Case No.** |
| **Plaintiffs,** | |
| **v.** | **DEFENDANT CITY OF PORTLAND'S REMOVAL NOTICE** |
| **CITY OF PORTLAND, an Oregon municipal corporation,** | |
| **Defendant.** | |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1331, 1441(a) and (c), and 1446 Defendant City of Portland ("City") removes this action from the Circuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon, Portland Division, and states as follows:

1.      The removing party, the City, is the defendant in the above-captioned action.

2.      On May 24, 2021, the above-entitled action was commenced against the City in the Circuit Court of the State of Oregon for the County of Multnomah and is now pending in such court, with the court case number 21CV20998.

Page  1  –  DEFENDANT CITY OF PORTLAND'S REMOVAL NOTICE

3.     On May 24, 2021, Defendant City of Portland received a copy of the above-captioned Complaint.

4.     No further proceedings have been had in this action in state court.

5.     This notice of removal is filed within 30 days after receipt of the Complaint.

6.     This Court has original jurisdiction over the above-entitled action because plaintiffs allege a violation of rights, privileges and immunities secured to them by the Constitution of the United States. 42 U.S.C. § 1983.  This action is removable under 28 U.S.C. § 1441(a).

7.     Attached herewith as Exhibit A is a copy of the Complaint and Summons received by Defendant City of Portland together with a copy of the Court Register of Actions.

8.     On the date set forth below, a copy of this Notice was served on Plaintiffs' attorney.  On the same date, a copy of this notice was filed with the clerk of the Multnomah County Circuit Court in which the action was commenced.

WHEREFORE, the City requests that the above-captioned action be removed from the Circuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon.

DATED: June 23, 2021.

Respectfully submitted,

*/s/ Naomi Sheffield*
Naomi Sheffield, OSB No. 170601
Sr. Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
William W. Manlove, OSB No. 891607
Sr. Deputy City Attorney
Email: william.manlove@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page  2  –  DEFENDANT CITY OF PORTLAND'S REMOVAL NOTICE

**CERTIFICATE OF SERVICE**

I hereby certify on June 23, 2021, I served the foregoing DEFENDANT CITY OF

PORTLAND'S REMOVAL NOTICE on the following parties by the method indicated:

| | |
|---|---|
| Michael Fuller<br>OlsenDaines<br>US Bancorp Tower<br>111 SW 5th Ave., Suite 3150<br>Portland, Oregon 97204<br>michael@underdoglawyer.com<br>*Of Attorneys for Plaintiffs* | ☒**Electronic service -** pursuant to LR 5-2(b).<br>☐**Mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal Service.<br>☐**Hand delivery**  ☐ **Facsimile transmission**.<br>☒Courtesy copy via **Email**. |
| Juan Chavez<br>Franz H Bruggemeier<br>Oregon Justice Resource Center<br>PO Box 5248<br>Portland, Oregon 97208<br>jchavez@ojrc.info<br>fbruggemeier@ojrc.info<br>*Of Attorneys for Plaintiffs* | ☒**Electronic service -** pursuant to LR 5-2(b).<br>☐**Mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal Service.<br>☐**Hand delivery**  ☐ **Facsimile transmission**.<br>☒Courtesy copy via **Email**. |
| Kelly Donovan Jones<br>The Law Office of Kelly D. Jones<br>819 SE Morrison Street, Suite 255<br>Portland, OR 97214<br>kellydonovanjones@gmail.com<br>*Of Attorneys for Plaintiffs* | ☒**Electronic service -** pursuant to LR 5-2(b).<br>☐**Mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal Service.<br>☐**Hand delivery**  ☐ **Facsimile transmission**.<br>☒Courtesy copy via **Email**. |

DATED: June 23, 2021.

Respectfully submitted,

*/s/ Naomi Sheffield*

Naomi Sheffield, OSB No. 170601
Sr. Deputy City Attorney
Email: naomi.sheffield@portlandoregon.gov
William W. Manlove, OSB No. 891607
Sr. Deputy City Attorney
Email: william.manlove@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

Skip to Main Content Logout My Account Search Menu Search Civil, Family, Probate and Tax Court Case Records Refine Search  Back

Location : All Locations    Images Help

# REGISTER OF ACTIONS
## CASE NO. 21CV20998

| | | |
|---|---|---|
| **Mark Usher, Steven Black, Scott Rupp, Jennifer Bryant vs City of Portland** § | Case Type: | **Injunctive Relief** |
| § | Date Filed: | **05/24/2021** |
| § | Location: | **Multnomah** |
| § | | |
| § | | |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | City of Portland | |
| **Plaintiff** | Black, Steven | **MICHAEL FULLER** <br> *Retained* <br> 503 222-2000(W) |
| **Plaintiff** | Bryant, Jennifer | **MICHAEL FULLER** <br> *Retained* <br> 503 222-2000(W) |
| **Plaintiff** | Rupp, Scott | **MICHAEL FULLER** <br> *Retained* <br> 503 222-2000(W) |
| **Plaintiff** | Usher, Mark | **MICHAEL FULLER** <br> *Retained* <br> 503 222-2000(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **OTHER EVENTS AND HEARINGS** |
| 05/24/2021 | **Complaint** <br> *Class Action - for Equitable Relief Pertaining to the City's Camping Site Sweeps; NOT SUBJECT TO MANDATORY ARBITRATION* <br> Created: 05/24/2021 3:52 PM |
| 05/24/2021 | **Service** <br> City of Portland          Unserved <br> Created: 05/24/2021 3:52 PM |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Plaintiff** Usher, Mark | | | |
| Total Financial Assessment | | | 281.00 |
| Total Payments and Credits | | | 281.00 |
| **Balance Due as of 06/22/2021** | | | **0.00** |
| 05/24/2021 | Transaction Assessment | | 281.00 |
| 05/24/2021 | xWeb Accessed eFile | Receipt # 2021-325359          Usher, Mark | (281.00) |

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR MULTNOMAH COUNTY

**MARK USHER**
**STEVEN BLACK**
**SCOTT RUPP**
**JENNIFER BRYANT**
individually and on behalf
of others similarly situated

            Plaintiffs

        vs

**CITY OF PORTLAND**

            Defendant

Case No. 21CV20998

**SUMMONS TO**
**CITY OF PORTLAND**

**TO    City of Portland**
    **c/o attorney Robert Taylor**
    **1221 SW 4th Avenue, Suite 430**
    **Portland, Oregon 97204**
    **robert.taylor@portlandoregon.gov**

**SUMMONS** – Page 1 of 3

NOTICE TO DEFENDANT:

READ THESE PAPERS CAREFULLY!

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

May 24, 2021

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**SUMMONS** – Page 2 of 3

STATE OF OREGON          )
                         ) ss:
County of Multnomah      )

I, the undersigned attorney of record for plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above-entitled cause.

May 24, 2021

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
Olsen Daines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service upon a document which you shall attach hereto.

May 24, 2021

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
Olsen Daines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**SUMMONS** – Page 3 of 3

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR MULTNOMAH COUNTY

| | |
|---|---|
| **MARK USHER**<br>**STEVEN BLACK**<br>**SCOTT RUPP**<br>**JENNIFER BRYANT**<br>individually and on behalf<br>of others similarly situated<br><br>         Plaintiffs<br><br>     vs<br><br>**CITY OF PORTLAND**<br><br>      Defendant | Case No.<br><br>**CLASS ACTION COMPLAINT**<br>**FOR EQUITABLE RELIEF**<br>**PERTAINING TO THE CITY'S**<br>**CAMPING SITE SWEEPS**<br><br>Filing Fee Authority: ORS 21.135<br>Not Subject to Mandatory Arbitration<br><br>Temporary Restraining Order Sought<br>Expedited Hearing Requested<br>Jury Trial Requested |

## 1.

## LEGAL BACKGROUND

When removing a person from a camping site, Oregon law requires the City of Portland to store any property left by the person, and to make the property reasonably available for the person to recover. Oregon law permits the City to discard the person's property only if the property is useless or insanitary.

## 2.

This class action does not seek to change Oregon's laws on camping site sweeps – only to enforce them.

**CLASS ACTION COMPLAINT** – Page 1 of 25

**3.**

**COMMON FACTUAL ALLEGATIONS**

The City has hired third party contractors like Rapid Response to conduct sweeps of various camping sites within the City. Each of the plaintiffs in this case are homeless people who have been the subject of sweeps by the City in the past six months. During these sweeps, the City, through its contractors, has systematically failed to comply with ORS 203.079(d) by failing to make property taken from the plaintiffs reasonably available to them for 30 days, and by discarding property taken from the plaintiffs that was neither useless nor insanitary. The City's systematic failure to comply with ORS 203.079(d) in part also failed to comply with promises made by the City in the Anderson Agreement[1] and Portland Police Directive 0835.20[2].

**4.**

Plaintiffs have retained a qualified expert with personal knowledge of the City's camping site sweeps who is available and willing to testify that the City's contractors have a pattern, practice, and custom of systematically ignoring the requirements of ORS 203.079(d), depriving plaintiffs and other similarly situated homeless people of liberty and property without due process.

---

[1] https://www.portlandoregon.gov/toolkit/article/738923

[2] https://www.portlandoregon.gov/police/article/541447

**CLASS ACTION COMPLAINT** – Page 2 of 25

**5.**

On May 19, 2021, the City released a memo announcing that it was changing the rules pertaining to when its contractors can sweep homeless camping sites, in favor of a more assertive approach.[3] The City stated in a press release that it will prioritize sweeping camping sites that have eight or more structures or that block public sidewalks.[4] The City also claims that it will prioritize sweeping camping sites when its law enforcement officers receive "credible reports of criminal activity."[5] The City does not define how an officer assesses whether a report is "credible" or what sort of "criminal activity" triggers a sweep, except to say that "camping" alone does not count.

**6.**

Each of the plaintiffs in this case are currently camping in the very sites that the City says it intends to target starting today, creating a substantial likelihood that plaintiffs will experience irreparable harm, including the loss of personal property without due process of law, absent intervention from the Court. The public interest strongly favors requiring the City to follow the law when removing people from camping sites.

---

[3] https://www.opb.org/article/2021/05/19/portland-oregon-homeless-encampments/

[4] https://www.portland.gov/omf/news/2021/5/19/city-council-unanimously-agrees-health-and-safety-protocols-unsanctioned

[5] https://www.portland.gov/sites/default/files/2021/revised-covid-19-protocols-may-2021.pdf

**CLASS ACTION COMPLAINT** – Page 3 of 25

**7.**

The City, through its contractors, has a pattern and practice and custom of failing to collect and catalogue and store seized property in a manner sufficient to make the property reasonably available for people to recover as the law requires. The City has a pattern and practice and custom of failing to document discarded property to allow any meaningful review of whether the property was properly determined to be either useless or insanitary as the law requires.

**8.**

The City does not deny that its contractors systematically ignored the requirements of ORS 203.079(d) with respect to plaintiffs in the past, nor has the City confirmed that it has adopted adequate policies and procedures to stop its contractors from continuing to systematically ignore the requirements of ORS 203.079(d) moving forward.

**9.**

As a result of the actions and omissions of the City and its contractors as described in this complaint, each plaintiff has experienced a wrongful loss of property and liberty without due process of law. Absent Court intervention or a settlement agreement with the City, each plaintiff faces a substantial likelihood of similar losses in the immediate future, as the City begins its more assertive approach to sweeping the camping sites where plaintiffs live.

**10.**

**FACTUAL ALLEGATIONS SPECIFIC TO
PLAINTIFF MARK USHER**

Mr. Usher has been houseless in Portland for about a year. His property has been swept multiple times by the City's contractors. On or about the first week of February of 2021, Mr. Usher was living in the area around Laurelhurst Park when it was swept by the City through its contractor, Rapid Response. This was the fifth sweep Mr. Usher had been subjected to within a few months. Each sweep pushed Mr. Usher back and forth between the area around Laurelhurst Park and the area around Sunnyside School. Notice of the sweep had been posted and Mr. Usher was mostly packed when Rapid Response and Portland Police came to remove the residents. Rapid Response put yellow tape around the residents' tents and belongings and would not let anyone other than the residents behind the tape to help the residents move their belongings. A non-resident tried to go past the tape and Portland Police stopped the person and threatened them with arrest. Mr. Usher was in his tent when the tape went up around him.

**11.**

Mr. Usher often gets things like coats and shoes in free boxes. The day before the sweep, Mr. Usher found a nice pair of Gordini goose down gloves in a free box. Mr. Usher has neuropathy that causes a very painful pins-and-needles feeling in his hands. The pain prevents him from sleeping well. He found that the Gordini gloves really helped to prevent and ease that pain and helped him to be able to sleep.

**CLASS ACTION COMPLAINT** – Page 5 of 25

**12.**

During the sweep, Portland Police officer Sergeant Jacobsen assigned an officer to speed up Mr. Usher's move. Mr. Usher was told that he had 20 minutes to move all of his belongings. While Mr. Usher was getting the rest of his possessions from inside his tent, a Portland Police officer, without asking Mr. Usher's permission, entered Mr. Usher's tent and began using his feet to kick Mr. Usher's belongings into a black plastic bag. The officer did not ask Mr. Usher if he could help or how he could help. When the bag was full, the officer took the black plastic bag out of the tent and put it on the Rapid Response trash truck. Mr. Usher's Gordini gloves were on the floor of his tent near the officer before the officer started kicking Mr. Usher's belongings into a trash bag. Mr. Usher has not seen the gloves since and has not been able to replace the gloves and has not been able to have the same relief from pain that the gloves had afforded him. The City and its contractors failed to make Mr. Usher's property reasonably available to him and discarded property that was neither useless nor insanitary.

**13.**

Mr. Usher has never seen Rapid Response or Portland Police take pictures of any possessions they have taken, has never seen them produce any list of items or receipts, has never seen labels of names put on the bags, and has never seen City agents do anything to ensure that the correct person would be able to reasonably recover their belongings back that Rapid Response and Portland Police officers have taken from the owners.

**CLASS ACTION COMPLAINT** – Page 6 of 25

**14.**

Because of the effects of having to start over after people's belongings are taken during sweeps and because of the constant threat of that deprivation by sweeps, Mr. Usher believes that that many unhoused people find it impossible to look for work. Additionally, the uncertainty of when or if the sweep will actually happen during the eight-day window provided in the sweep notice is stressful, causing him to worry and lose sleep. Sometimes Rapid Response will come to the area the day before a sweep and tell the residents to expect it the following day or a particular day. Sometimes that is true and other times the sweep does not happen when Rapid Response has said that it would. Other times there is no warning of when it might happen within the eight days, and Rapid Response just suddenly appears and tells people to move all of their belongings in 15 to 30 minutes. After the last sweep in February of 2021, Mr. Usher got a new tent and set up in the same place later in the day. Mr. Usher currently lives on City property and fears that he will be swept in the next few days and lose more possessions in a sweep. He believes that there is nowhere he can safely live in Portland without the threat of being swept.

**15.**

**FACTUAL ALLEGATIONS SPECIFIC TO
PLAINTIFF STEVEN BLACK**

Mr. Black has lived in Portland for almost all of his life, and he has been homeless in Portland since 2013 after being unable to make the final payments on the home he owned. He has slept in camps, doorways, underpasses, shelters and other places. Mr. Black has multiple disabilities that cause him physical pain and that affect his movement and his ability to focus. He has had three back surgeries and has titanium in his back that causes him pain, and he has arthritis. He had been receiving Social Security Disability Insurance, but after his payee retired he has been unable to find a new one. All of his income now comes from returning cans for the deposit money. In warmer weather he is able to return cans to make up to $100 a day, but, in the colder weather, the titanium in his back and his arthritis make it too painful and difficult for him to do the same.

**16.**

Mr. Black has had many possessions taken from him by Rapid Response during sweeps in the Spring of 2020 and in the area around Laurelhurst Park in November of 2020. He believes that he has seen and knows of over one hundred people who have had possessions taken by the City over the last two years. In the Spring of 2020, Mr. Black was living in a tent near about 20 other people by the Franz Bakery Outlet Store on NE 11th Ave.

**CLASS ACTION COMPLAINT** – Page 8 of 25

**17.**

Mr. Black had lived there for about a month before he was subjected to a sweep by Rapid Response, and some of the other residents had lived there longer and had never been swept before. Rapid Response had posted a notice that the area would be swept, but the residents did not believe they would be swept because of the pandemic guidance that has consistently stated that camps should not be swept.

**18.**

On the day of the sweep, Rapid Response and Portland Police officers arrived at 7am, and the officers began yelling at each tent to, "Wake up and get out!", and generally being rude to the people living there. Rapid Response told the residents of the camp to take what they could carry and assured the residents that all their possessions that they could not carry would be very safe in the Rapid Response warehouse. Mr. Black did not see Rapid Response destroy anything while they packed up his tent and other possessions. Rapid Response took no photos of the belongings of the residents. He did not see the Rapid Response create any inventory of the belongings of the residents. All of the belongings that the residents could not carry with them in a single load Rapid Response put in clear plastic bags, with labels that said "Franz" and the date. Rapid Response did not put any residents' names on the bags and no resident was given any receipt, list of items, or other means to track what Rapid Response had taken. Rapid Response gave him only a piece of paper with the phone number of the warehouse on it. Rapid Response didn't tell him where to he could go to be safe from another sweep.

**CLASS ACTION COMPLAINT** – Page 9 of 25

**19.**

Mr. Black was able to leave the camp with only some of his clothing, a backpack, and a bike. Rapid Response took Mr. Black's 10-man tent, which he bought 'used' by returning 1,200 cans, that had a retail value of $700. Rapid Response took his sleeping bag, blankets, clothes, another smaller tent that he had inside his tent, a tarp, a bike, and a utility wagon.

**20.**

Mr. Black went to the Rapid Response warehouse the next day at around 2pm. At the warehouse, nothing was labeled or sorted by anything other than the date and place a sweep took place. Mr. Black could not find any of his possessions at the Rapid Response warehouse. He described his possessions to a Rapid Response warehouse worker, and the worker told him that someone had already taken his belongings. Mr. Black then rode around inner SE Portland for the next two days trying to find his possessions that had been taken by Rapid Response and then by other people. He found and recovered his tent but nothing else. Rapid Response taking all of his belongings made day-to-day life even harder for Mr. Black and caused him stress and sadness. He felt like he got robbed. After Rapid Response took most of his possessions during that sweep, Mr. Black had no shelter and had to sleep in doorways for a few months.

**CLASS ACTION COMPLAINT** – Page 10 of 25

**21.**

Mr. Black did not want to experience the stress and loss of another sweep, so he felt like he could not sleep in his tent, which he stored at a friend's house, or begin keeping possessions that aid his day-to-day life. Mr. Black found it emotionally very hard to sleep in doorways and felt at much greater risk from COVID-19 when he was unable to stay in his tent. After a few months of earning money by returning cans, Mr. Black was able to rebuild the possessions he had and began living in a tent on the grass along the sidewalk near the Laurelhurst Park tennis courts. Mr. Black was swept at Laurelhurst in November of 2020. He had not seen the notice that was posted, but others had told him that a notice had been posted and everybody knew they would be swept. He believed that the original sweep notice had expired and had not been reposted when he was swept.

**22.**

The police and Rapid Response came around 1pm. They told Mr. Black that he had 15 minutes to leave, and he started packing. He had already began packing in anticipation of the sweep. Rapid Response walked around telling everyone they had 15 minutes to leave. After 15 minutes, Rapid Response and the Portland Police officers came back to him. The Portland Police officers stood behind the Rapid Response who told him that his 15 minutes were up, that they were then going to start taking his belongings, and that he would have to come to the warehouse to get them back.

**CLASS ACTION COMPLAINT** – Page 11 of 25

**23.**

Rapid Response started taking his belongings as he was still packing up his clothes. Rapid Response did not destroy or cut anything as they were packing it up. Mr. Black believed that the police were there to intimidate the residents into moving more quickly. Mr. Black's belongings were put into clear plastic bags and put into a Rapid Response truck. Rapid Response took no photos of his belongings that they confiscated. The plastic bags were not labeled with his name. Rapid Response confiscated his tent, a newer used bicycle that he had recently bought from a pawn shop, a sleeping bag that his mom had bought for him, the clothing he could not gather in time or did not have space to take with him within 15 minutes, hygiene items, a tarp, an Adidas backpack, and a rechargeable car battery. He was able to walk away with only a backpack, a bike, and a duffel bag full of clothing.

**24.**

Mr. Black went to the Rapid Response warehouse two days after the sweep. He gave them his name but they had nothing stored under his name. They took him to the area where the "Laurelhurst" sweep stuff was stored in clear plastic bags on shelves. He could see things that belonged to his friends. But he did not see any of his belongings at the warehouse. He never recovered his belongings. Because of his experiences, he does not believe that he will be able to recover any possessions that are taken by Rapid Response in any future sweeps that he expects and fears that he will experience.

**CLASS ACTION COMPLAINT** – Page 12 of 25

**25.**

After he was swept from Laurelhurst, Mr. Black moved to a camp near Sunnyside School. He left Sunnyside before they were swept and went to a shelter for a few months until it closed in April. He is now living on property owned by the City of Portland that he fears will be swept, and will have possessions taken, in the next few days under the enhanced sweeps planned by the City.

**26.**

## FACTUAL ALLEGATIONS SPECIFIC TO
## PLAINTIFF SCOTT RUPP

Mr. Rupp has been homeless in Portland for many years. He has been swept three times in the last two years. Each time when Rapid Response arrives, they give the residents 20 minutes to pack up all of their belongings and leave. Mr. Rupp believes that in 20 minutes he and others can only think about where they are going to go next and can only just start processing what is happening. He has never seen any Rapid Response worker or Portland Police officer take any pictures of anyone's property when they take it.

**27.**

In December of 2020, Mr. Rupp was living on SE Oak St near Laurelhurst Park when Rapid Response and Portland Police arrived in the morning to conduct a sweep of the people living there in tents. He believes that it was December 13. Rapid Response and the police began sweeping the residents on SE 37th Ave. and worked their way towards Mr. Rupp.

**CLASS ACTION COMPLAINT** – Page 13 of 25

**28.**

When they reached him, he told them he did not want to move. Rapid Response and the Portland Police proceeded to ignore Mr. Rupp and continued to sweep the rest of SE Oak St. The sweep went on all day. Eventually, Rapid Response and the Portland Police again approached Mr. Rupp and surrounded him and another person there to help him. Sergeant Jacobsen told Mr. Rupp that Rapid Response would bag up all of his belongings and if he interfered he would be arrested. Mr. Rupp asked to take some of his belongings and they answered that he had had his chance to take any of his belongings and prevented him from taking any of his belongings. He asked the police and Rapid Response for a property receipt, but they did not answer him. Rapid Response took no photos of his belongings. They bagged his belongings and did not label them with his name. They did not create or give him an inventory of his possessions, take photos, or create anything that would identify the possessions as his, make a record of what had been taken, or prevent others from claiming his belongings. Rapid Response took his car battery that he had purchased for $99, two tents, blankets, sleeping bags, clothing, all of his tools worth hundreds of dollars, two backpacks, and three bikes that were in pieces that he was putting back together and which had all of their parts. They also took an irreplaceable and sentimental ring that his late wife had given to him--it was in one of the tents, in a box by his bed. He watched them bag everything up and toss it into the back of the truck.

**CLASS ACTION COMPLAINT** – Page 14 of 25

**29.**

Rapid Response told Mr. Rupp that they would bring his belongings anywhere he wanted as long as it was not at Laurelhurst. He has seen Rapid Response deliver some items back to people.

**30.**

Mr. Rupp called Rapid Response and asked them if they could deliver his belongings to him near Sunnyside School. They told him that they were too busy to do that. They told him to go to the warehouse to get his belongings. About two weeks later, Mr. Rupp went to the Rapid Response warehouse to retrieve his belongings. The person working in the warehouse said that the possessions from the Laurelhurst sweep were in the corner in a pile of plastic bags. She pointed in the direction and Mr. Rupp went to the pile to find his belongings. At the pile of bags, Mr. Rupp saw a man who he was sure had not been living at Laurelhurst during the sweep and who was going through those plastic bags. Mr. Rupp watched the man take items that belonged to people from Laurelhurst. As soon as Mr. Rupp approached, the man gathered up the stuff that he had pulled from the plastic bags and left. None of the bags were labeled. Mr. Rupp found many bags that were torn open. Mr. Rupp eventually found two bags of his stuff: one bag was on one side of the pile, the other was on the opposite side of the pile. In these two bags were some tarps, a few shirts, a pair of pants and his two backpacks. The clothing and backpacks were muddy, moldy, and mildewed. He did not get any of his tools or bike parts back.

**CLASS ACTION COMPLAINT** – Page 15 of 25

**31.**

He learned that Rapid Response had disposed of his car battery when he asked them what they did with batteries and they told him they dispose of them. He learned that they also dispose of propane tanks.  Mr. Rupp took his stuff and left. He did not get all of his belongings back.

**32.**

Mr. Rupp has found it very difficult emotionally and logistically to start all over after the sweep. He had a community at Laurelhurst and had friends around him. He knew he had people there he could depend on. Mr. Rupp currently lives on City property and believes and fears that the City's enhanced sweeping will target his current home for a sweep in the next few days and that he will have more possessions taken that he will never get back.

**33.**

**FACTUAL ALLEGATIONS SPECIFIC TO
PLAINTIFF JENNIFER BRYANT**

Ms. Bryant had a small wood splitting business. She became houseless about a year ago after her truck with the wood splitting equipment was stolen and never recovered by police. She has experienced four sweeps in the last six months. In November of 2020, Ms. Bryant was living in a tent in the area around Laurelhurst Park. She had been there for about two months. A few days before Thanksgiving, around 7-8am, a person began screaming that the police were there and that the residents were being swept. A notice of a sweep had been posted previously. Police put up a barricade at SE 37th and Oak. St., barricading both 37th and Oak.

CLASS ACTION COMPLAINT – Page 16 of 25

**34.**

She could see the police lights at the end of 37th. She cried and she started packing. She placed her things that she was planning to pack on a tarp. She walked away to get supplies to help pack, and, when she came back, many of her possessions were gone. The other residents and others helping the residents move confirmed that they had not taken her possessions. Around her Ms. Bryant saw Rapid Response taking and bagging other people's belongings. Ms. Bryant believes that Rapid Response took thousands of dollars of her clothing, including all of her professional attire, boots and shoes, and household goods. She could not understand what was happening and started crying again. Suddenly, the Rapid Response and police left, taking the barricades and aborting the sweep.

**35.**

About a week later, Rapid Response put up another sweep notice. She had moved down the block and was in a different tent because her other tent had been ruined during the previous sweep. Around 9 or 10am, she returned to the area and found that sweep was happening. When she got back, her tent was gone. Another resident told her that Rapid Response had told everyone to put their belongings on the sidewalk and then Rapid Response took those things that were laid on the sidewalk along with everything else, including her tent and his tent. In the tent, she had a laptop she had recently purchased and that she was using to help her get a job.

**CLASS ACTION COMPLAINT** – Page 17 of 25

**36.**

Rapid Response took the rest of her clothes, her sleeping bag, blankets, foam flooring that she had just bought for the interior of her tent, rechargeable lights, and all of her basic necessities and hygiene products. She tried to find her tent and belongings and she asked Rapid Response where she could find her possessions, but she got no answers. She didn't get anything back that day. And she was not told that Rapid Response was supposed to keep her belongings at the warehouse or how to get them back. She was new to being homeless and did not know and was not told by Rapid Response how she could get her belongings back.

**37.**

The next time Ms. Bryant was swept was near Sunnyside School, where she had moved with many others after they were swept from Laurelhurst. In January 2021, a notice was posted, then it was taken down, and then Rapid Response put it back up. During that sweep, Rapid Response took her pop up, which she had purchased new for $150; tarps; her bike; and the new bedding she had bought after the Laurelhurst sweep for $200. They took all of her clothing that she had recently bought. She watched them take everything. She then moved to a grass area outside of Lone Fir Cemetery. She lived there with two other people and they did everything they could to keep their small area neat and tidy and clean. In February 2021, a week before a big winter storm, Rapid Response came and swept their small camp. She had just bought a 10-person tent from Fred Meyer. Rapid Response destroyed it during the sweep.

**CLASS ACTION COMPLAINT** – Page 18 of 25

**38.**

Rapid Response took her tarps, hundreds of dollars of new bedding she had once again bought after the previous sweep, the new clothing she had bought to replace the clothing that had been taken in the previous sweep. They also took her gear that she bought to start a job as a flagger, which she was certified to be in November 2020. The sweeps not only set her back by having to constantly pay and work to replace the possessions that are taken and destroyed by Rapid Response, but the sweeps also prevent her and others from getting jobs because of the constant fear of being swept and having to stay with her possessions or lose them in a sweep, the loss of which has caused her to be unable to work the job and greater instability. She has never seen or heard of Rapid Response taking pictures of people's belongings before bagging them up and taking them or before throwing anything away. Ms. Bryant currently lives on City property and is worried that she will be swept soon and will again lose all of her possessions and the little bit of stability that she now has.

**39.**

**CAUSES OF ACTION**

**– Claim One –**

**42 U.S.C. § 1983 – Due Process – Substantive – Property Destruction**

This claim is not a request for damages at this time, only equitable and injunctive relief. The Fourteenth Amendment to the U.S. Constitution protects the rights of any person from unlawful deprivations of property and liberty without due process of law. Contrary to the U.S. Constitution, Oregon state law, internal directives, and the Anderson settlement, the City has confiscated the property of unhoused people like plaintiffs, then either failed to catalogue the property or improperly catalogued the property, resulting in its loss and destruction. Illegally losing or destroying plaintiffs' property and the property of those similarly situated to plaintiffs violates their substantive right in not having property taken by the State without due process of law when conducting sweeps of their homes. The City has engaged in a pattern, practice, and custom of depriving individuals subject to their sweeps of houseless encampments of their property and liberty. Plaintiffs and those similarly situated have been harmed by the City's pattern, practice, and custom described in this complaint. The City's actions and inactions are the proximate causes of plaintiffs' injuries. Plaintiffs are entitled to injunctive and declaratory relief, as outlined below.

**40.**

**– Claim Two –**

**42 U.S.C. § 1983 – Due Process – Procedural – Vagueness**

The Fourteenth Amendment to the U.S. Constitution protects the rights of any person from unlawful deprivations of property and liberty without due process of law. The City has announced a new policy of conducting sweeps of encampments that does not give adequate notice to putative class members as to how to avoid having their property lost or destroyed. There is an insufficient number of shelter beds in Portland and the City does not maintain adequate available housing for people without means to pay rent. The City have not complied with the laws surrounding property loss and destruction during its sweeps.[6] The City's plan to conduct sweeps is silent on ameliorating the current pattern, practice, and custom of illegally losing and destroying property. Taken together, this plan is unenforceable and illegally deprives plaintiffs and those similarly situated an opportunity to avoid punishment, violating their due process rights. The City's actions and inactions are the proximate causes of plaintiffs' injuries. Plaintiffs are entitled to injunctive and declaratory relief, as outlined below.

---

[6] The City plans to conduct sweeps with vague and arbitrary rules that rely on the discretion of law enforcement officers to assess "credible reports of criminal behavior." The City's plan also loosely describes encampments with "eight or more structures" as being subject to sweeps, but is silent on how or when structures will be counted as being a part of an encampment rather than just adjacent. Additionally, tying the "eight structure" rule to CDC guidelines is unavailing. COVID-19 is transmitted by persons, not structures, being in close proximity to one another.

**CLASS ACTION COMPLAINT** – Page 21 of 25

**41.**

**– Claim Three –**

**42 U.S.C. § 1983 – Unlawful Seizure**

The Fourth Amendment to the U.S. Constitution protects the rights of any person from unlawful seizures of their property and affects. The City has unlawfully confiscated the property of unhoused people like plaintiffs, then either failed to catalogue the property or improperly catalogued the property, resulting in its loss and destruction. Illegally losing and destroying plaintiffs' property and the property of those similarly situated to plaintiffs violates their rights to be free from unlawful seizures. Plaintiffs are informed and believe that the acts of the City and their employees and agents were intentional in failing to protect and preserve plaintiffs' property and that, at minimum, the City was deliberately indifferent to the likely consequence that the property would be seized and lost or destroyed unlawfully, based on the past circumstances of similar constitutional and statutory violations of the law. The City has engaged in a pattern, practice, and custom of depriving individuals subject to its sweeps of houseless encampments of their property and liberty. Plaintiffs and those similarly situated have been harmed by the City's pattern, practice, and custom described in this complaint. The City's actions and inactions are the proximate causes of plaintiffs' injuries. Plaintiffs are entitled to injunctive and declaratory relief, as outlined below.

**42.**

**– Claim Four –**

**Declaratory Relief**

Plaintiffs respectfully request that this Court declare that the conduct described in Claims 1 through 3 as alleged in this complaint violated plaintiffs' respective Constitutional rights.

**43.**

**– Claim Five –**

**Injunctive Relief**

Plaintiffs request that this Court order the City, their agents, contractors, and their successors to:

**a.** Comply with ORS 203.079(d)'s requirements to not discard personal property with apparent utility;

**b.** Comply with Portland Police Directive 0835.20, including and not limited to its requirements that the City photograph and list on an itemized inventory the personal property seized at sweeps, noting the location of the seizure, time of the seizure, and description of the item seized;

**c.** Comply with the terms of the Anderson settlement agreement; and

**d.** Cease enforcement of the City's "REVISED Homelessness and Urban Camping Impact Reduction Program COVID-19 Protocol" until it is no longer ambiguous, arbitrary, and unlawful.

**CLASS ACTION COMPLAINT** – Page 23 of 25

**44.**

**REQUEST FOR JURY TRIAL**

Plaintiffs respectfully request a trial by jury on any issue to which they have the right to request a jury to resolve.

**45.**

**PRAYER FOR RELIEF**

Plaintiffs respectfully request relief against the City as sought above, and any other relief the Court may deem appropriate, and an order appointing interim class counsel and an order certifying this case as a class action.

May 24, 2021

<div style="margin-left:40%">

RESPECTFULLY FILED,

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Juan Chavez, OSB No. 136428**
**Franz H Bruggemeier, OSB No. 163533**
Oregon Justice Resource Center
PO Box 5248
Portland, Oregon 97208
Phone 503-563-3357

**Kelly Donovan Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
Phone 503-847-4329

</div>

**CLASS ACTION COMPLAINT** – Page 24 of 25

## CERTIFICATE OF SERVICE

I certify that on the date below I caused this document and the attached ORCP 32 notice to be served on the following:

**City of Portland**
**1221 SW 4th Avenue, Suite 430**
**Portland, Oregon 97204**
**robert.taylor@portlandoregon.gov**

May 24, 2021

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**CLASS ACTION COMPLAINT** – Page 25 of 25